IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | |
|---|---|
| IRMA BLAS,<br><br>   Plaintiff,<br><br>v.<br><br>ROBERT T. ROSEN, M.D., P.A.,<br>AMISTAD MEDICAL PROFESSIONALS,<br>and BOSTON SCIENTIFIC<br>CORPORATION,<br><br>   Defendants. | CASE NO. 2:18-cv-00066<br><br>ON REMOVAL FROM<br>CAUSE NO. 34215<br>VAL VERDE COUNTY, TEXAS |

**BOSTON SCIENTIFIC CORPORATION'S NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Boston Scientific Corporation ("Boston Scientific") hereby files this Notice of Removal from the 83rd Judicial District of Val Verde County, Texas to the United States District Court for the Western District of Texas, Del Rio Division,[1] and alleges as follows:

**INTRODUCTION**

1. On October 11, 2018, Plaintiff Irma Blas ("Plaintiff") filed a law suit in the 83rd Judicial District of Val Verde County, Texas, styled *Irma Blas v. Robert T. Rosen, M.D., P.A., Amistad Medical Professionals, and Boston Scientific Corporation*, No. 34215. Plaintiff served the Petition on Boston Scientific on October 16, 2018.

2. Plaintiff's Petition brings product liability claims against Boston Scientific and

---

[1] By removing this action to this Court, Boston Scientific does not waive any defenses, objections, or motions available under state or federal law. Boston Scientific expressly reserves the right to move for dismissal of some or all of Plaintiff's claims and/or seek dismissal based on lack of personal jurisdiction, improper venue, and/or the doctrine of *forum non conveniens*.

1

health care liability claims against Dr. Robert T. Rosen ("Dr. Rosen") and Amistad Medical Professionals ("Amistad") (collectively, the "Health Care Defendants"). Specifically, Plaintiff alleges that the Solyx SIS System ("Solyx")—a pelvic mesh product manufactured by Boston Scientific and indicated for the treatment of stress urinary incontinence—was defective, and that the Health Care Defendants were negligent in their selection and use of the product.

3. Plaintiff, however, improperly joined the non-diverse Health Care Defendants to defeat diversity jurisdiction. Plaintiff has no possibility of recovery against the in-state defendants because her claims are barred by the statute of limitations. Further, the Health Care Defendants cannot be considered "sellers" of the Solyx under Texas law, and therefore cannot be held liable under any product liability theory. As such, this Court must dismiss the non-diverse Health Care Defendants and disregard their citizenship for purposes of diversity jurisdiction. *See Flagg v. Stryker Corp.*, 819 F.3d 132 (5th Cir. 2016).

4. This Court therefore has original subject matter jurisdiction over this civil action pursuant to 27 U.S.C. §1332 because there is complete diversity of properly joined parties, and the amount in controversy exceeds the sum or value of $75,000.

## PROCEDURAL COMPLIANCE

5. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon and by Boston Scientific related to this action are attached as exhibits in the following manner:

    Exhibit A:    Index of Matters Being Filed

    Exhibit B:    Pleadings and Answers to Such Pleadings

    Exhibit C:    All Executed Process and Orders in Case

    Exhibit D:    State Court Docket Sheet

Exhibit E:     List of All Parties and Counsel

6. Pursuant to 28 U.S.C. § 124(d)(5), the United States District Court for the Western District of Texas, Del Rio Division is the federal judicial district encompassing the District Court of Val Verde County, Texas where this suit was originally filed. Venue is therefore proper in this district under 28 U.S.C. § 1441(a).

7. This Notice of Removal is timely. Boston Scientific files this Notice of Removal within 30 days of October 16, 2018, the date of service of the initial pleading upon Boston Scientific. *See* 28 U.S.C. § 1446(b)(1).

8. The Health Care Defendants' consent is not necessary because they were improperly joined. *Id.*; *see also Jernigan v. Ashland Oil*, 989 F.2d 812, 815 (5th Cir. 1993) (holding improperly joined parties need not consent to removal). Consequently, all properly joined and served defendants—namely, Boston Scientific—have joined in this removal. *See* 28 U.S.C. § 1446(b)(2)(a).

9. Immediately following the filing of this Notice of Removal, written notice of its filing will be delivered to Plaintiff's counsel, and Boston Scientific will promptly file a copy of this Notice with the Clerk of the 83rd Judicial District Court of Val Verde County, Texas as required by 28 U.S.C. § 1446(d).

## THIS COURT HAS DIVERSITY JURISDICTION

10. This is an action over which this Court would have original jurisdiction under the provisions of 28 U.S.C. §1332, and therefore, it is one that may be removed to this Court under the provisions of 28 U.S.C. §§ 1441 and 1446. Removal under Section 1441 is appropriate when complete diversity of citizenship exists between plaintiffs and all *properly joined* defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

11. This action may be removed to this Court pursuant to 28 U.S.C. § 1441(b) because Boston Scientific—the only properly joined defendant—is not a citizen of Texas.

## I. The Amount in Controversy Exceeds $75,000.00.

12. The $75,000 amount in controversy requirement is readily satisfied. *See* 28 U.S.C. §§ 1332(a).[2] As the Supreme Court has recently clarified, a notice of removal to federal court under 28 U.S.C. § 1446(a) need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold and need not include actual evidence establishing that amount. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 190 L.Ed.2d 495 (2014).

13. Here, it is apparent from the face of the Petition and the nature of the injuries alleged by Plaintiff that the amount in controversy exceeds $75,000. Indeed, Plaintiff is specifically seeking monetary relief "over $1,000,000.00." *See* Pet. ¶ 10.

14. The damages awarded to plaintiffs in similar federal cases also demonstrate Plaintiff's intent to seek over $75,000.00. *See Huskey v. Ethicon, Inc.*, No. 2:12-cv-05201 (S.D. W. Va. 2014), ECF No. 402, 431 (returning a verdict against Ethicon for strict liability and negligence claims related to the implantation of a pelvic mesh device); *Cisson v. C.R. Bard, Inc.*, No. 2:11-cv-00195 (S.D. W. Va. 2013), ECF No. 436, 449 (returning a verdict against C.R. Bard for claims related to the implantation of a pelvic mesh device). The fact that other similarly situated plaintiffs have received verdicts for more than the minimum amount-in-controversy in similar cases demonstrates the instant Plaintiff's intent to seek over $75,000.00.

15. Thus, this Court has original jurisdiction because the amount in controversy, exclusive of interest and costs, exceeds $75,000.00. *See* 28 U.S.C. § 1332(a).

---

[2] Boston Scientific does not concede that Plaintiff is entitled to any of the relief sought in the Petition.

4

**II.     Complete Diversity of Citizenship Exists Between Plaintiff and Boston Scientific.**

16.    Plaintiff Irma Blas is, and was at the time of the filing of this action, a resident and citizen of Del Rio, Val Verde County, Texas.  Pet. ¶ 2.

17.    For purposes of determining its citizenship under 28 U.S.C. § 1332(c)(1), Boston Scientific is a citizen of the States of Delaware and Massachusetts because it is incorporated in the State of Delaware and has its principal place of business in Natick, Massachusetts.  Pet. ¶ 5.

18.    Plaintiff alleges that the Health Care Defendants are citizens of Texas.  Pet. ¶¶ 3-4. The citizenship of the Health Care Defendants, however, must be disregarded in determining diversity jurisdiction because they are not properly joined to Plaintiff's claims against Boston Scientific.

19.    At all material times, Plaintiff and Boston Scientific are citizens of different states. As such, complete diversity exists between Plaintiff and the only properly joined defendant.

**A.     The Health Care Defendants are improperly joined because Plaintiff's claims against the Health Care Defendants are barred by the statute of limitations.**

20.    A non-diverse defendant is improperly joined if the plaintiff could not survive a 12(b)(6) challenge against that defendant.  *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016).  Here, Plaintiff's claims against the Health Care Defendants cannot survive dismissal under Rule 12(b)(6) because the face of Plaintiff's Petition demonstrates that her claims are barred by the statute of limitations.  *See, e.g., Jones v. Alcoa, Inc.,* 339 F.3d 359, 366 (5th Cir. 2003), *cert. denied*, 540 U.S. 1161 (2004) (finding that dismissal on statute of limitations grounds is appropriate pursuant to Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is time-barred and the pleadings fails to raise some basis for tolling).

21.    Plaintiff's claims against the Health Care Defendants are governed by the Chapter 74 of the Texas Civil Practice & Remedies Code:  both Dr. Rosen and Amistad meet the statutory

5

definition of "health care providers," and Plaintiff's claims against them are based upon their alleged negligence in the course of providing medical care to her. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(12)(A) (defining "health care provider" as "any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care . . ."); *id.* § 74.001(a)(13) (defining "heath care liability claim" as "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care . . ., which proximately results in injury to or death of a claimant . . ."); *see also Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 664 (Tex. 2010) ("When the unsafe or defective condition of [medical] equipment injures the patient, the gravamen of the resulting cause of action [against the health care provider] is [a health care liability claim].").

22. Chapter 74 provides a strict two year statute of limitations for all health care liability claims. *Id.* § 74.251. Pursuant to the statute, claims begin to accrue on the day of "the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed." *Id.* The Texas Supreme Court has interpreted this statute strictly, finding that it essentially abolished the discovery rule for medical malpractice claims. *See, e.g., Walters v. Cleveland Regional Medical Center*, 307 S.W.3d 292, 298 n.28 (Tex. 2010) (recognizing that "the Legislature abrogated the court-fashioned discovery rule" in 1975) (citing *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985)).

23. Limitations under Chapter 74 begins to run on one of three dates: (1) the occurrence of the breach or tort, (2) the last date of the relevant course of treatment, or (3) the last date of the relevant hospitalization. *Shah v. Moss*, 67 S.W.3d 836, 841 (Tex. 2001). But importantly, "a

plaintiff may not choose the most favorable date . . . . Rather, if the date the alleged tort occurred is ascertainable, limitations <u>must begin</u> on that date. And if the date is ascertainable, further inquiry into the second and third categories is unnecessary." *Id.*

24. Courts have interpreted the phrase "the occurrence of the breach or tort" to mean the date of the act or omission on which the claim is founded. *Marchal v. Webb*, 859 S.W.2d 408, 413 (Tex. App.—Houston [1st Dist.] 1993, no writ) (explaining that "the terms *breach* or *tort* [in the context of Section 74.251] are used to designate the act or omission on which the claim is founded"). Thus, if the date of the act or omission on which Plaintiff's claims against the Health Care Defendants is ascertainable, the cause of action *must* accrue on that date. Importantly, "the question of when a claim accrues is one of law and not fact." *Chambers v. Conaway*, 883 S.W.2d 156, 159 (Tex. 1993).

25. In this case, the face of Plaintiff's Petition makes clear that her claims against the Health Care Defendants began to accrue, *at the latest*, on the date Plaintiff was implanted with the Solyx: May 13, 2015. *See* Pet. ¶ 41. Specifically, Plaintiff's cause of action against the Health Care Defendants for negligence focuses on their alleged negligence in deciding to implant the Solyx into Plaintiff:

- *Prior* to May 13, 2015, the Health Care Defendants "knew the Pelvic Mesh Products have high failure, injury, and complication rates, fail to perform as intended, require frequent and often debilitating additional surgeries, and have caused severe and irreversible injuries, conditions, and damage to a significant number of women." Pet. ¶ 38

- *Prior* to May 13, 2015, Dr. Rosen "recommended implantation of the Pelvic Mesh Products but failed to fully disclose to Plaintiff Blas all risks associated with implantation." Pet. ¶ 40.

- The Health Care Providers were negligent in failing to select and implant an appropriate medical device, failing to perform the proper medical procedure, improperly selecting Plaintiff as an appropriate candidate for pelvic mesh, in implanting defective pelvic mesh that has a high failure rate in Plaintiff, and in

7

failing to train Dr. Rosen regarding implantation of pelvic mesh. Pet. ¶ 44.b.-c.

26. Plaintiff also brings product liability claims against the Health Care Defendants in the form of design defect, manufacturing defect, and failure to warn.[3] *See* Pet. ¶¶ 46-65. These causes of action are likewise "health care liability claims" subject to Chapter 74 of the Civil Practice and Remedies Code: "it is the gravamen of the claim, *not the form of the pleadings*, that controls th[e] determination" of whether a claim qualifies as a health care liability claim. *Marks*, 318 S.W.3d at 664 (emphasis added). Where, as here, the "relationship between the injury causing event and the patient's care or treatment" is "substantial and direct," the claim is a health care liability claim under Chapter 74 and subject to the strict two year statute of limitations. *Id.*; *see also Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005) ("a health care liability claim cannot be recast as another cause of action to avoid the requirements of" Chapter 74).

27. The Health Care Liability Defendants' acts or omissions at issue in designing the Solyx, manufacturing the Solyx, and allegedly failing to warn about the dangers of the Solyx all took place *prior to* the date of implant. *See, e.g.,* Pet. ¶ 49 (alleging that the Solyx was "defectively designed when sold"); Pet. ¶ 55 (alleging that the Solyx implanted in Plaintiff was defectively manufactured); Pet. ¶ 64 (alleging that the Health Care Defendants' failure to warn Plaintiff of the dangerous propensities of the Solyx caused her injuries). As such, the latest date that her claims could have begun to accrue is the date of implant—May 13, 2015.

28. All of Plaintiff's allegations of negligence or strict liability against the Health Care Defendants took place on or before the date on which Plaintiff was implanted with the Solyx. As

---

[3] As outlined in Section B, *infra*, these claims are barred for additional reasons and should be dismissed.

8

such, the "act or omission" at issue occurred, *at the latest*, on the date of implant—May 13, 2015.[4]

29. Because each of Plaintiff's claims against the Health Care Defendants accrued on May 13, 2015, those claims expired on May 13, 2017. TEX. CIV. PRAC. & REM. CODE § 74.251. Plaintiff did not file the instant action until October 11, 2018—over a year after her claims against the Health Care Defendants expired.

30. This court should therefore disregard the citizenship of the improperly joined Health Care Defendants, dismiss the Health Care Defendants from the case, and exercise subject matter jurisdiction over the remaining case. *See, e.g., Flagg*, 819 F.3d at 136; *see also Pena, ex rel. De Los Santos v. Mariner Health Care Inc.*, Civ. No. CC-09-62, 2010 WL 2671571, *2 (S.D. Tex. July 1, 2010) (granting a 12(b)(6) motion to dismiss a health care lability claim because it was not filed within the two year statute of limitations); *Lucky v. Haynes*, Civ. A. No. 3:12-CV-2609-B, 2013 WL 3054017, *6 (N.D. Tex. June 18, 2013) (same).

**B. The Health Care Defendants are improperly joined because Plaintiff's product liability claims against the Health Care Defendants have no reasonable basis in fact or law.**

31. In addition to asserting a medical negligence claim against the Health Care Defendants, Plaintiff purports to assert claims for product liability against them. *See* Pet. ¶¶ 46-65. To be subject to Texas' product liability act, "one must sell a product in a defective condition, and must be engaged in the business of selling such a product." *Cobb v. Dallas Fort Worth Med. Ctr.-Grand Prairie*, 48 S.W.3d 820, 826 (Tex. App.—Waco 2001, no pet.). Thus, "the concept of

---

[4] *Even if* Plaintiff's Petition alleged a continuing course of treatment or other actionable acts or omissions on the part of the Health Care Defendants that supposedly occurred after the implant date, Plaintiff cannot plead around the fact that her ultimate complaint about the Health Care Defendants' behavior is their decision to implant the Solyx into her. As such, Texas law is clear that the accrual date <u>must</u> be found to be the date of implant. *See Shah*, 67 S.W.3d at 841 (holding that "if the defendant committed the alleged tort on an ascertainable date, whether the plaintiff established a course of treatment is *immaterial* because limitations begins to run on the ascertainable date") (emphasis added).

strict [product] liability generally does not apply to defective services." *Id*. (citing *Nevauex v. Park Place Hosp.,* 656 S.W.2d 923, 926 (Tex. App.—Beaumont 1983, writ ref'd n.r.e.)).

32. Texas defines a "seller" as "a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." TEX. CIV. PRAC. & REM. CODE § 82.002(a).

33. Hospitals and physicians, therefore, are generally not subject to the product liability act because they "are not engaged in the business of selling the product or equipment used in the course of providing medical services." *Cobb*, 48 S.W.3d at 826 (citing *Thomas v. St. Joseph Hosp.,* 618 S.W.2d 791, 796–97 (Tex. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.)); *Hadley v. Wyeth Laboratories, Inc.*, 287 S.W.3d 847, 849 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). This is especially true when "the products used are intimately and inseparably connected with the provision of medical services." *Cobb*, 48 S.W.2d at 826 (citing *Easterly v. HSP of Tex.,* 772 S.W.2d 211, 213 (Tex. App.—Dallas 1989, no writ)).

34. This analysis is in line with the great weight of authority holding that health care providers cannot be held strictly liable for injuries caused by the products used in connection with rendering such services. *See, e.g.*, *Zbras v. St. Vincent's Med. Ctr.*, No. CV95323593S, 2002 WL 532441, at *1 (Conn. Super. Ct. Mar. 20, 2002) ("[t]he court is in agreement with those cases which hold that hospitals are not engaged in the business of selling equipment utilized in operative procedures but rather are engaged in the business of providing medical services, and therefore the defendant is not subject to the product liability act for providing the [medical device at issue]") (citations omitted); *In re Breast Implant Prod. Liab. Litig.*, 503 S.E.2d 445, 448-49 (S.C. 1998) (holding that "health care providers who perform breast implant procedures are, in essence,

providing a service" and therefore may not be held strictly liable "for products used in the course of providing medical treatment"); *NME Hosps., Inc. v. Azzariti*, 573 So.2d 173 (Fla. Ct. App. 1991) ("A hospital that utilizes an alleged defective product only in the course of its primary function of providing medical services is not subject to an action in strict liability where the professional services could not have been rendered without using the product.") (citation omitted); *Podrat v. Codman-Shurtleff, Inc.*, 558 A.2d 895, 898 (Pa. Super. Ct. 1989) (holding that "the hospital could not be liable under a theory of strict liability because the hospital was not in the business of selling [the medical device at issue], its use was only incidental to the hospital's primary function of providing medical services and the medical services could not have been rendered without the use of this product").

35. Plaintiff's Petition acknowledges that Boston Scientific—*not* the Health Care Defendants—designed, manufactured, marketed, labeled, packaged, and sold the Solyx. Pet. ¶ 11. Thus, the Health Care Defendants' only connection to the Solyx is that Dr. Rosen allegedly used the product to treat Plaintiff's stress urinary incontinence. Pet. ¶¶ 36-42. As such, there is no basis in law or fact supporting Plaintiff's product liability claims against the Health Care Defendants because they are not "sellers" under Texas law and did not engage in the *business of selling* the Solyx to Plaintiff. *See Cobb*, 48 S.W.3d at 826. Accordingly, Plaintiff's product liability claims against the Health Care Defendants must be dismissed.

## CONCLUSION

36. There is complete diversity between Plaintiff and Boston Scientific, the only properly joined defendant in this case, and the amount in controversy requirement is satisfied. Thus, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

37. Plaintiff's improper joinder of the Health Care Defendants renders their citizenship

immaterial for purposes of determining diversity jurisdiction.

38. As set forth above, Defendant Boston Scientific Corporation hereby removes the above-captioned action from the 83rd Judicial District Court of Val Verde County, Texas to the United States District Court for the Western District of Texas, Del Rio Division.

Dated:  November 9, 2018			Respectfully submitted,

						SHOOK, HARDY & BACON L.L.P.


						By: */s/ Kelsey A. Copeland*
						      Kelsey A. Copeland
						      State Bar No. 24073683
						      E-Mail:  kcopeland@shb.com
						      600 Travis Street, Suite 3400
						      Houston, Texas  77002-2926
						      Phone: (713) 227-8008
						      Fax:     (713) 227-9508

						      Heriberto Morales, Jr.
						      State Bar No. 24011285
						      Email: hmorales@langleybanack.com
						      Langley & Banack
						      401 Quarry Street
						      Eagle Pass, TX  78852
						      Phone: (830) 773-6700

						*Attorneys for Defendant,*
						*Boston Scientific Corporation*

## **CERTIFICATE OF SERVICE**

      I certify that a true and correct copy of the foregoing DEFENDANT BOSTON SCIENTIFIC CORPORATION'S NOTICE OF REMOVAL has been provided to all known counsel of record in accordance with the Federal Rules of Civil Procedure on this 9th day of November, 2018, as follows:

        Nicole E. Henning  
        Texas State Bar No. 24013054  
        The Henning Firm  
        435 W. Nakoma, Suite 101  
        San Antonio, TX 78216  
        Telephone:  (210) 563-7828  
        Facsimile:  (210) 563-7829  
        Email:  nicole@henningfirm.com

        */s/ Kelsey A. Copeland*  
        Kelsey A. Copeland

685854 v2